# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**SAMUEL JOHNSON, JR.**                                                               **PLAINTIFF**
**ADC #124670**

**V.**                    **CASE NO. 4:17-CV-397-SWW-BD**

**MELANIE JONES**                                                                      **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge Susan Webber Wright. Mr. Johnson may file written objections to this Recommendation, if he wishes. Objections should be specific and should include the factual or legal basis for the objection. To be considered, all objections must be received in the office of the Court Clerk within 14 days of this Recommendation.

If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing the record. By not objecting, Mr. Johnson risks waiving his right to appeal questions of fact.

**II.   Discussion**

   A.  Background

Samuel Johnson Jr., an inmate in the Arkansas Department of Correction, filed this civil rights lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Johnson claimed that Dr. Melanie Jones and Dr. Jeffrey Stieve failed to

provide him adequate medical treatment for a left-knee injury. At Mr. Johnson's request, the Court dismissed his claims against Dr. Stieve. (#26)

Defendant Jones has now moved for summary judgment. (#34) Mr. Johnson has responded to the motion (#40), and it is ripe for review.

B.  Summary Judgment Standard

In a summary judgment, the Court rules in favor of a party before trial. A party is entitled to summary judgment if the evidence, viewed in a light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute about any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

C.  Undisputed Medical History

On February 16, 2017, Mr. Johnson reported to the infirmary complaining that he had injured his left knee playing basketball. (#36-1 at p.1) He was prescribed 600 milligrams of ibuprofen to be taken up to three times a day, as needed, and he was provided crutches.

On February 20, 2017, Mr. Johnson submitted a health service request form complaining that he had not received any pain medication. (*Id*. at p.2) On February 25, 2017, Mr. Johnson was seen by infirmary personnel who prescribed naproxen for three days. He was told to return if his symptoms had not improved in three days. (*Id*. at p.3)

On March 9, 2017, Mr. Johnson was transferred to Benton Work Release. (*Id*.) On March 13, 2017, he reported to the infirmary complaining of knee pain. (*Id*.at p.4) He

reported that he had slipped in mud while at work and further injured his knee. (*Id.*) Mr. Johnson was allowed to "lay in" until he could be seen by a doctor. (*Id.*)

On March 17, 2017, Dr. Guy Henry examined Mr. Johnson. (*Id.* at p.5) Dr. Henry submitted an MRI-consult request, noting the left knee "with large effusion, pain elicited with flexion or extension." (*Id.*) Dr. Henry diagnosed Mr. Johnson with "extremely likely ACL tear." (*Id.* at p.6) He prescribed ibuprofen and authorized crutches for Mr. Johnson to use at all times. (*Id.*)

On March 20, 2017, Mr. Johnson was transferred to the Wrightsville Unit. (*Id.* at p.11) On March 23, 2017, Defendant Jones examined Mr. Johnson and diagnosed him with a knee sprain. (*Id.* at p.13) She opined that an MRI was not necessary and recommended that Mr. Johnson be seen again in one month. (*Id.*) Defendant Jones authorized crutches and an Ace bandage for Mr. Johnson, but she cancelled the MRI-consult request based on "considerable change and improvement in Mr. Johnson's condition." (*Id.*; #36-3 at p.2) She explained to Mr. Johnson that "imaging studies are not always required" and that "[t]he plan was for conservative management." (#36-3 at p.2)

On March 25, 2017, Mr. Johnson submitted a health service request form complaining of swelling and pain in his knee. (#36-1 at p.16)

On March 27, 2017, Mr. Johnson was seen at sick call. At that time, Ms. McCauley ordered ibuprofen and provided him muscle rub. (*Id.* at p.17)

On April 1, 2017, Mr. Johnson submitted another health service form, again complaining of knee pain. (*Id.* at p.18) On April 3, 2017, Ms. Sievers examined Mr. Johnson during sick call and provided him analgesic balm. (*Id.* at p.19)

On April 5, 2017, Defendant Jones examined Mr. Johnson and noted effusion, but explained that "sprains/strains can sometimes take months to resolve." (*Id.*) At that time, she authorized a knee brace for Mr. Johnson. (*Id.* at pp.19-20)

On April 24, 2017, Mr. Johnson submitted another health service request form, again complaining of knee pain. (*Id.* at p.23) On April 26, 2017, Ms. Hopson examined Mr. Johnson's knee at sick call. She told him that a doctor would see him the following day and instructed him to continue taking ibuprofen. (*Id.* at p.24) Defendant Jones did not examine Mr. Johnson, however, until May 16, 2017. (*Id.* at p.25)

At the May 16th examination, Defendant Jones noted that Mr. Johnson's tendonitis had improved and that he was "nearly back to baseline." (*Id.*) At that time, Mr. Johnson told Defendant Jones that his knee brace had helped; that he was still using his crutches occasionally; and that he was taking ibuprofen as needed, but not daily. Defendant Jones prescribed a seven-day steroid prescription (prednisone). (*Id.*)

On May 23, 2017, Mr. Johnson submitted another health service request form complaining of knee pain. (*Id.* at p.27) The following day, Ms. Hopson examined Mr. Johnson and noted that "[n]o other treatment [was] needed at this time." (*Id.* at p.28) In addition, she renewed his prescription for ibuprofen. (*Id.* at p.30)

On May 29, 2017, Mr. Johnson submitted a sick-call request explaining that he had reinjured his knee when he slipped and fell in the rain. (*Id.* at p.29) The following day, Ms. Hopson examined Mr. Johnson and noted two knots in his leg, one beside his kneecap, with tenderness, and swelling. (*Id.* at p. 30) She referred Mr. Johnson to Defendant Jones. (*Id.*)

4

On June 1, 2017, Defendant Jones examined Mr. Johnson and noted that he was initially "quite belligerent" and that other ADC officers had reported that Mr. Johnson "ambulates without crutches in barrack and without limp." (*Id.* at p.31) Defendant Jones observed "firm focal swelling approx. 5cm in diameter anterior lateral aspect of knee." (*Id.*) She diagnosed Mr. Johnson with a knee sprain and prescribed a five-day steroid prescription of prednisone and recommended continued use of the knee brace. (*Id.*)

On June 7, 2017, Defendant Jones submitted an MRI-consult request for Mr. Johnson. (*Id.* at p.33) On June 9, 2017, he underwent an MRI. (*Id.* at p.36) The MRI results revealed "disruption of the anterior cruciate ligament" and "minimal joint effusion," which could be a "chronic injury," as well as "[m]inimal abnormal signal with the posterior horn and body of the lateral meniscus," which "may represent chronic degenerative change rather than acute injury." (*Id.* at pp.38-39)

On June 13, 2017, Defendant Jones met with Mr. Johnson to discuss his MRI results. (*Id.* at p.40) Defendant Jones told Mr. Johnson that he had sustained an ACL injury. Although he was provided a knee brace and crutches, Mr. Johnson told Defendant Jones that he no longer needed the crutches. (*Id.*) At that time, she referred Mr. Johnson to a physical therapist and seventeen physical therapy appointments were scheduled for him. (*Id.*) On June 28, 2017, Mr. Johnson was transferred to the Ouachita River Unit, where he underwent physical therapy. (#36-2)

On August 9, 2017, Mr. Johnson's physical therapist discharged him from physical therapy and noted that he could return to his "home unit." (*Id.* at p.20) Mr. Johnson's discharge papers list the reason for his discharge as "goals met." (*Id.*)

D. Deliberate Indifference Claim

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285 (1976). "Deliberate indifference" is evidenced, however, only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970. Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

Moreover, mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Stated another way,"[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that 'he did not feel' he received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Defendant Jones attaches Dr. Stieve's affidavit in support of her motion for summary judgment. (#36-4) Based on his review of Mr. Johnson's medical records, Dr. Stieve testifies that Defendant Jones "repeatedly tested [Mr. Johnson] for an ACL tear, which consistently indicated that the knee was stable." (*Id.* at p. 4) Furthermore, Dr. Stieve explains, the MRI results indicated that Mr. Johnson had a "base line chronic injury" and that it was "not something we would send out to be repaired." (*Id.* at p.5) He

6

states that "only professional athletes *need* ACL repair." (*Id*.) (emphasis in original) Dr. Stieve concluded that he "fully support[ed] Dr. Jones's medical assessment of Mr. Johnson" and did not "see anything medically inappropriate on [Defendant Jones's] part with regard to her evaluation, assessment, consultation, prescription, and physical therapy decisions." (*Id*.)

Here, Mr. Johnson has not come forward with any evidence contradicting Dr. Stieve's testimony. Based on the undisputed evidence presented, the Court cannot conclude that Defendant Jones acted with deliberate indifference to Mr. Johnson's medical needs. Rather, Mr. Johnson's medical records indicate that his medical needs were consistently addressed and that he was provided both prescription and over-the-counter medication to relieve his pain, as well as authorizations for crutches, an Ace bandage, and a knee brace. Although Mr. Johnson's conditions had improved by mid-May 2017, after his fall in late May 2017, his pain increased. At that time, Defendant Jones ordered an MRI. Based on the MRI results, she referred Mr. Johnson to a physical therapist. Mr. Johnson was ultimately discharged from physical therapy because the goals had been met. These undisputed facts fall exceedingly short of deliberate indifference to Mr. Johnson's medical needs, and she is entitled to judgment as a matter of law.

## III.   Conclusion

The Court recommends that Dr. Jones's motion for summary judgment (#34) be GRANTED. Mr. Johnson's claims should be DISMISSED, with prejudice.

DATED, this 26th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE